* * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Rideout with modifications.
 * * * * * * * * * * RULING ON EVIDENTIARY MATTER
Defendants filed a Motion to Add Evidence to the Record on July 18, 2007. In particular, defendants requested the May 11, 2007 treatment record from Dr. J. Th. Bloem be admitted into evidence in this claim. Plaintiff made no objection. *Page 2 
IT IS HEREBY ORDERED that the May 11, 2007 treatment record from plaintiff's treatment with Dr. Bloem shall be admitted into evidence in this matter.
 * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of the parties.
3. An employer-employee relationship existed between plaintiff and defendant-employer on plaintiff's date of injury, October 1, 2002.
4. Plaintiff's average weekly wage is $600.00.
5. The parties submitted the following documents into the record as Stipulated Exhibits:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement,
 b. Stipulated Exhibit #2 — Industrial Commission Forms,
6. The parties submitted the following additional documents into the record:
 a. Plaintiff's medical records,
 b. Defendants' Exhibit #1 — job offer dated October 22, 2004;
 c. Defendants' Exhibit #2 — job offer dated December 14, 2005; and
 d. Defendants' Exhibit #3 — job offer dated June 9, 2006.
 * * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old and had completed the tenth grade of high school.
2. Plaintiff worked as an extruder operator for the defendant from 1995 through December 18, 2002. Plaintiff has not worked since December 18, 2002.
3. On or about October 1, 2002, plaintiff was diagnosed with bilateral carpal tunnel syndrome. Defendants accepted plaintiff's injuries as compensable and have provided all medical and indemnity compensation related to plaintiff's compensable injuries.
4. Plaintiff sought treatment with Dr. Gilbert Whitmer who ultimately performed carpel tunnel surgery on plaintiff's hands. On June 1, 2004, Dr. Whitmer performed a right elbow ulnar nerve transposition. Thereafter, Dr. Whitmer lost his license to practice medicine and plaintiff's care was transferred to Dr. George Edwards, Jr. of Raleigh Hand Center, P.A.
5. Dr. Edwards began treating plaintiff regularly on August 23, 2004. Dr. Edwards noted plaintiff complained of numbness in both hands. Dr. Edwards assigned plaintiff work restrictions of no work with hot or sharp objects and no lifting greater than 40 pounds on a long-term basis.
6. On October 4, 2004, Dr. Edwards revised plaintiff's work restrictions to no lifting greater than 20 pounds with the right hand for four weeks and then gradually increasing up to full duty over the subsequent four weeks. Dr. Edwards opined plaintiff was at maximum medical improvement and assigned permanent partial impairment ratings of 14% to the right hand and 4% to the left hand. *Page 4 
7. On November 22, 2004, Dr. J. Th. Bloem conducted an independent medical evaluation. Dr. Bloem indicated plaintiff complained of severe tingling in right hand and trouble laying his right arm on a table. Using the 5th edition of the AMA Rating Guide, Dr. Bloem assigned plaintiff permanent partial impairment ratings of 32% to the right arm and 5% to the left arm.
8. At his deposition, Dr. Bloem opined that plaintiff should avoid any work involving repetitive flexing of the wrist, pulling or lifting over 30 pounds only occasionally, and no work that could aggravate the elbow. Following his deposition, Dr. Bloem saw plaintiff again on May 11, 2007. Dr. Bloem recommended plaintiff be seen by a hand specialist rather than returning to him for treatment.
9. On February 16, 2005, Dr. Edwards saw plaintiff again and, upon examination, found that plaintiff's complaints of numbness were diffuse such that he could not ascertain a cause for it. Dr. Edwards also found that plaintiff had no atrophy, had full strength in the muscles of the hand, and had no stiffness. Dr. Edwards recommended nerve conduction tests to determine if there were any objective explanations for plaintiff's complaints. The tests showed normal carpal tunnel function with some delays at the cubital tunnel bilaterally.
10. Dr. Edwards last saw plaintiff on April 5, 2006. Dr. Edwards noted continued pain in the ulnar nerve distribution on the right but could not recommend any further treatment as there were no objective explanations for plaintiff's complaints. Dr. Edwards then assigned an 8% permanent partial impairment rating to plaintiff's left arm, increasing it from its original rating due to the now present cubital tunnel findings from the nerve conduction tests and paresthesia. Dr. Edwards did not alter the 14% permanent partial impairment rating to the right hand. *Page 5 
11. On May 17, 2006, defendants sent Dr. Edwards a Workers' Compensation Medical Status Questionnaire along with a job description for an LIM Utility Operator and requested Dr. Edwards review the job description and provide an opinion as to whether plaintiff could perform the job.
12. On June 7, 2006, Dr. Edwards completed the Questionnaire indicating plaintiff could perform the LIM Utility Operator position but should avoid prolonged periods of elbow flexion or strain and less than 40 pounds of force with the right hand.
13. On June 9, 2006, defendant-employer offered plaintiff the LIM Utility Operator position. The plaintiff was offered the same salary that he earned prior to his injury and was offered the position on first shift, which is the shift plaintiff had worked prior to his injury. The description provided to plaintiff indicated that he would be required to lift up to 35 pounds. The description did not indicate how much elbow flexion would be required to perform the position.
14. Plaintiff did not accept the position. Based on plaintiff's failure to accept the offered position, defendants filed a Form 24 Application to Terminate or Suspend Benefits. Plaintiff responded and an Order denying defendants' Application was filed by Special Deputy Commissioner Elizabeth M. "Lacy" Maddox on August 10, 2006. Defendants filed an appeal leading to the evidentiary hearing before Deputy Commissioner Rideout.
15. Ms. Bonnie Gay is the human resources representative for defendant-employer. She testified that the LIM Utility Operator position was a real position with defendant-employer and that she would have to hire someone to perform the job if plaintiff did not accept the position.
16. Mr. Mark Miller is a team leader and supervisor of the LIM room for defendant-employer. Mr. Miller has performed all aspects of the LIM Utility Operator job. While the *Page 6 
portion of the job requiring loading and unloading of the curing oven may require lifting up to 40 pounds, the operator himself may limit the amount of tub weight. Thus, the operator need not lift or move greater than 40 pounds to perform the job.
17. Mr. Miller testified that during the inspection portion of the LIM Utility Operator position, plaintiff would be flexing and extending his arms and resting his elbows on the table. This portion of the job would be performed for four hours per day and plaintiff would inspect approximately 7200 pieces.
18. At his deposition on February 22, 2007, Dr. Edwards was shown a video depicting the different tasks performed by the LIM Utility Operator. Dr. Edwards opined to a reasonable degree of medical certainty that plaintiff could perform all functions of the position in that none of the depicted tasks required prolonged elbow flexion.
19. The Full Commission gives greater weight to the opinions of Dr. Edwards, who was plaintiff's authorized treating physician, over those of Dr. Bloem who only saw plaintiff twice and provided no treatment to plaintiff.
20. The LIM Utility Operator position is within plaintiff's permanent restrictions as assigned by his authorized treating physician, Dr. Edwards.
21. Plaintiff's refusal of the LIM Utility Operator position was reasonable at the time of the refusal given the lack of details regarding the amount of lifting and arm flexion required to perform the job. However, given the evidence and testimony obtained at the evidentiary hearing and the post-hearing depositions, the LIM Utility Operator position, in fact, is suitable and within plaintiff's restrictions.
22. Defendants had reasonable grounds to prosecute this matter.
 * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On or about October 1, 2002, plaintiff sustained a compensable injury by accident when he was diagnosed with bilateral carpal tunnel syndrome. N.C. Gen. Stat. § 97-2(6).
2. Pursuant to N.C. Gen. Stat. § 97-32, if an employee refuses suitable employment without justification, the employee is not entitled to any compensation during the continuance of such refusal. N.C. Gen. Stat. § 97-32, Franklin v. Broyhill Furn. Ind., 123 N.C. App. 200,472 S.E.2d 382 (1996). In determining whether a position is suitable, the North Carolina Supreme Court stated in Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E.2d 798, (1986):
 If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market.
Peoples, 316 N.C. at 438, 342 S.E.2d at 806. The LIM Utility Operator position offered to plaintiff was suitable. However, given the lack of details regarding the amount of lifting and arm flexion required of the position when it was initially offered to him, plaintiff was justified in his refusal of the position at that time.
3. Defendants are required to provide plaintiff with reasonable necessary medical treatment related to his compensable injuries that tends to effect a cure, provide relief, or lessen the period of disability. Plaintiff and defendants shall choose a hand specialist to become plaintiff's new authorized treating physician. N.C. Gen. Stat. §§ 97-2(19), 97-25, and 97-25.1. *Page 8 
4. Defendants did not prosecute the matter without reasonable grounds and, as such, plaintiff is not entitled to attorneys' fees under N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following:
 AWARD
1. Defendants shall continue paying plaintiff temporary total disability compensation in the amount of $400.00 per week until plaintiff returns to work or until further Order of the Commission.
2. A reasonable attorneys' fee of 25% of the compensation benefits paid plaintiff from the date of the filing of this Opinion and Award and going forward is approved for plaintiff's attorney. Defendants shall issue every fourth check directly to plaintiff's attorney.
2. Defendants shall pay all medical expenses incurred or to be incurred resulting from plaintiff's compensable injuries so long as it tends to effect a cure and give relief or lessen plaintiff's disability.
3. Defendants shall pay the costs of this action.
 ORDER
IT IS HEREBY ORDERED that, if the LIM Utility Operator position is still available, plaintiff shall participate in a trial return to work as an LIM Utility Operator. Should plaintiff fail to accept the position and participate in the trial return to work, defendants may apply to the Industrial Commission to suspend plaintiff's benefits.
This the 26th day of November, 2007.
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ DANNY LEE McDONALD COMMISSIONER *Page 1